UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 14-20654-Civ-COOKE/TORRES

FRANK LOPEZ, as personal
representative of the Estate of
Giraldo Lopez, and MAGALY
NUNEZ DELGADO, individually
and as assignee of Michelle Soto,

    Plaintiffs,

v.

ALLSTATE FIRE AND CASUALTY
INSURANCE COMPANY,

    Defendant.

_____/

**ORDER ON PLAINTIFFS' *DAUBERT* MOTION TO
EXCLUDE THE TESTIMONY OF D. JAMES KADYK**

    Plaintiffs bring this third-party insurance bad faith action against Defendant Allstate Fire and Casualty Insurance Company ("Allstate") for its allegedly unreasonable failure to settle claims made against Allstate's insured, Michelle Soto, resulting in an excess judgment against its insured. Before me now is Plaintiffs' *Daubert* Motion to Exclude the Testimony of D. James Kadyk (ECF No. 47), to which Allstate has filed a response in opposition (ECF No. 56). I have reviewed the Motion, response, the record, and the relevant legal authorities. For the reasons that follow, Plaintiffs' Motion is granted.

### I.    BACKGROUND

    The following allegations are taken from Plaintiffs' Amended Complaint For Common Law Bad Faith (ECF No. 41). Allstate issued an automobile insurance policy (the "Policy") to Michelle Soto, which extended liability insurance for her and her automobile (a 2009 Ford Mustang) for the six-month period of July 28, 2011 to January 28, 2012. (Am. Compl. ¶ 9, ECF No. 41). The Policy extended defense and indemnity coverage to Ms. Soto in the event that she became liable for property damage or bodily injury arising out of the use or maintenance of her automobile. (*Id.* ¶ 10). The Policy provided coverage for $25,000

1

per person for bodily injuries, with an aggregate bodily injury limit of $50,000 per occurrence. (*Id.* ¶ 11). The Policy further provided Personal Injury Protection (PIP) up to $10,000 per person, with a separate $5,000 death benefit. (*Id.* ¶ 12). These limits are separate from the Policy's bodily injury limits and apply to personal injuries suffered by an uninsured pedestrian arising out of the use or maintenance of Ms. Soto's automobile. (*Id.*).

On September 6, 2011, Ms. Soto lost control of her 2009 Ford Mustang while driving southbound on 107 Avenue. (*Id.* ¶ 13). After driving nine blocks in three lanes of oncoming traffic, Ms. Soto drove her vehicle over the sidewalk curb and crashed into a bus stop where Giraldo Lopez and his wife, Magaly Nunez Delgado, were waiting. (*Id.* ¶ 13). Mr. Lopez was hit, dragged, and ultimately crushed by Ms. Soto's car. (*Id.* ¶ 14). He was pronounced dead on the scene. (*Id.*). Mrs. Nunez Delgado witnessed it all from a few feet away. (*Id.*).

Accident investigators arrived at the scene to take photographs, interview witnesses, and document the scene. (*Id.* ¶ 15). Witnesses reported seeing Ms. Soto driving erratically at a high rate of speed on the wrong side of the street. (*Id.* ¶ 16). Some witnesses claimed Ms. Soto had stated shortly after the accident that she "lost control of her car." (*Id.* ¶ 17). Ms. Soto admitted to investigators at the scene that she took seizure medication and that she had a history of seizures. (*Id.* ¶ 18). She confirmed this in a communication to her insurer, Allstate, approximately eight days later, on September 15, 2011. (*Id.* ¶ 18).

On September 7, 2011, Mrs. Nunez Delgado and her son, Frank Lopez (as executor of Giraldo Lopez's Estate), retained Joseph J. Kalbac, Jr. of the Colson Hicks Eidson firm as counsel for their damages claim against Ms. Soto. (*Id.* ¶ 21). Two days later, on September 9, 2011, Mr. Kalbac sent a letter to Ms. Soto's insurer, Allstate, providing notice of his clients' claims against Ms. Soto and requesting a copy of Ms. Soto's Allstate policy. Allstate assigned the matter claim number 0217437888 SGB.

What ensued over the next few months is at the heart of the instant action. An Allstate PIP adjustor disclosed to Mr. Kalbac that Ms. Soto's insurance limits were comprised of two $25,000 bodily injury limits, a $5,000 PIP death benefit for Mr. Lopez, and $10,000 in PIP benefits for Mrs. Nunez Delgado. (*Id.* ¶ 24). The adjustor represented that these limits would be tendered to the Lopez family in contemplation of settlement. (*Id.*). Despite this representation, on or about September 9 or 12, 2011, Allstate sent an Affidavit of No Fault Benefits to Mr. Kalbac's trust account and tendered $5,000 to Giraldo's estate

for death benefits under the Policy's PIP protection. (*Id.* ¶ 25). It offered no payment for Mrs. Nunez Delgado's injuries. (*Id.*).

On September 12, 2011, Mr. Kalbac contacted Allstate to request that it tender the $65,000 in aggregate limits previously disclosed. (*Id.* ¶ 26). At this point, Allstate indicated it was prepared to defend Ms. Soto on the grounds that wet and slippery conditions were the root cause of the accident. (*Id.*). On that same day, Allstate sent Mr. Kalbac another letter, offering Mr. Lopez's estate $25,000 in exchange for a release of claims and damages "that the Estate and decedents' survivors may have had, may now have, or may hereafter have because of or arising out of the death of Giraldo Lopez." (*Id.* ¶ 29). Allstate offered no money to Mrs. Nunez Delgado for her own injuries. (*Id.*).

Over the next few days, Mr. Kalbac communicated further with Allstate about Mrs. Nunez Delgado's condition and injuries, requesting a sworn statement from Ms. Soto as to any collectable assets she possessed, and providing evidence indicating Ms. Soto's liability. Ultimately, after Allstate's continuing failure to tender the full $65,000 policy limits, on September 22, Mr. Kalbac served Allstate with a complaint naming Ms. Soto as defendant, and naming Mrs. Nunez Delgado and Mr. Lopez's Estate as plaintiffs (the "State Action").

After the lawsuit was filed, Allstate offered $50,000, bringing the total offer to $55,000 inclusive of PIP death benefits for Mr. Lopez, but still $10,000 below the Policy's cumulative $65,000 limits. (*Id.* ¶ 40). On October 24, 2011, Frank Lopez, as executor of his father's estate and attorney-in-fact for his mother, ended settlement discussions for policy limits. (*Id.* ¶ 42). Plaintiffs claim that, had Allstate offered prompt payment of Ms. Soto's full $65,000 policy limits before October 24, 2011, Plaintiffs would have accepted the settlement and released their claims against Ms. Soto.

During the State Action, Mr. Kalbac uncovered evidence of Ms. Soto's substantial, documented history of seizures, which he was able to use to obtain leave to file an amended complaint for punitive damages. (*Id.* ¶¶ 47, 49). On July 9, 2013, Ms. Soto entered into a global settlement agreement to resolve her liability for the accident of September 6, 2011. (*Id.* ¶ 50). Pursuant to the settlement, Ms. Soto agreed to the entry of a judgment against her in the amounts of $1,150,000 for the wrongful death of Mr. Lopez and $350,000 for Mrs. Nunez Delgado's personal injuries. (*Id.* ¶ 51). Ms. Soto further agreed to assign her rights against Allstate, including all claims arising under her insurance policy and for bad faith.

3

In conjunction with the final judgment in the State Action, Allstate tendered to Plaintiffs Ms. Soto's remaining $10,000 in PIP benefits on October 29, 2013 and $50,000 bodily injury limit on or about October 15, 2011. (*Id.* ¶ 54). The Policy's $5,000 PIP death benefit for Mr. Lopez had previously been tendered on or about September 9, 2011. (*Id.* ¶ 50).

Plaintiffs bring this action alleging that Allstate's unreasonable and bad faith failure to perform the duties it owed Ms. Soto was the proximate cause for the excess judgment entered against her. (*Id.* ¶ 73). Plaintiffs now seek to exclude Defendant's expert, D. James Kadyk, Esq., from testifying in this case pursuant to *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) and its progeny. Mr. Kadyk's expert opinions purportedly relate to proper insurance claims handling processes, and will be discussed in detail below.

## II.    LEGAL STANDARDS

Rule 702 of the Federal Rules of Evidence provides:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert has reliably applied the principles and methods to the facts of the case.

A district court has the responsibility of acting as a gatekeeper to exclude unreliable expert testimony. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). In order to determine the admissibility of expert testimony, a district court must consider whether: (1) the expert is qualified to testify competently as to the subject matter he intends to address; (2) the method employed by the expert is sufficiently reliable; and (3) the testimony assists the trier of fact to comprehend the evidence through the application of the witness's expertise. *Quiet Tech. DC-8, Inc. v. Hurel-Dubois U.K. Ltd.*, 326 F.3d 1333, 1340-41 (11th Cir. 2003). The party seeking to introduce expert testimony bears the burden of satisfying these

criteria by a preponderance of the evidence. *Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1306 (11th Cir. 1999).

### III.   OPINIONS OF DEFENDANT'S EXPERT D. JAMES KADYK

Defendant intends to rely on the expert opinions of D. James Kadyk, Esq. Mr. Kadyk provides eleven separate opinions, all essentially finding that Allstate properly handled the claims against Ms. Soto relating to the September 6, 2011 accident. (ECF No. 47-1). Mr. Kadyk is an attorney with thirty-six years of experience in casualty and insurance law. He also provides consulting services to insurance companies. (Kadyk Dep. at 13:24 – 14:4, ECF No. 47-3). In arriving at his expert opinions, he reviewed an extensive record, consisting of, *inter alia*, the Policy, pleadings and discovery from the instant case and the underlying State Action, deposition testimony, and attorney files. (ECF 47-1 at 2; Kadyk Dep. at 12:6-8). He also relied on Florida Statutes. (Kadyk Dep. at 11:11-14). Mr. Kadyk's focus was on the first 45 to 60 days following the accident since Mr. Frank Lopez had testified that he would not consider resolution of the claims made in the underlying lawsuit against Allstate's insured, Michelle Soto, after October 24, 2011. (*Id.*).

Mr. Kadyk's eleven opinions can be summarized as follows:

(1) Allstate timely and properly paid the death benefit provided under the personal injury protection coverage of the policy.

(2) The per person limit of the bodily injury coverage of the policy was timely offered and physically tendered to the personal representative of the Estate of Giraldo Lopez through counsel.

(3) Allstate properly, timely and in good faith offered and physically tendered the per-person limits of the bodily injury liability coverage to Magaly Nunez Delgado through counsel.

(4) Allstate properly requested documentation of losses that would be potentially incurred by Magaly Nunez Delgado and covered by the personal injury protection portion of the policy which was never submitted in connection with any claim for benefits under that coverage. Under the terms of the policy and the requirements of the statute, benefits under the personal injury protection coverage with reference to Mrs. Nunez Delgado were not due at any time prior to Mr. Lopez's decision to reject any settlement with Ms. Soto.

(5) Efforts by Allstate and its assigned defense counsel to defend Ms. Soto are not evidence of any bad faith.

(6) The claim handling by Mr. Kalbac created an impediment and obstacle to resolution of all of the claims under the various coverages of the Allstate policy. From the testimony, it appears that Mr. Kalbac failed or refused to recognize separate and distinct elements of the two tort claims he was presenting and failed or refused to recognize the differences between the first party personal injury protection coverages and the bodily injury liability coverage. Mr. Kalbac's insistence that personal injury protection benefits be paid without documentation of covered losses being incurred (and in fact before any such losses were incurred) and his apparent advice to his client (or acquiescence in his client's erroneous understanding) that the personal injury protection limits were just another source of cash to be paid to Mrs. Nunez Delgado made it impossible for Allstate to accomplish its goal of paying the full liability limits to each claimant on each of the two separate liability claims.

(7) Certain clerical errors were made in inputting information into Allstate's system which resulted in certain correspondence being sent directly to Mrs. Nunez Delgado that should have been sent to Mr. Kalbac, but these communications were irrelevant to the ultimate outcome.

(8) There is no support for the assertion by Mr. Kalbac that Allstate made promises of the delivery of checks totaling $65,000, which were not kept.

(9) Mr. Kalbac's request for a sworn statement was for the purpose of exploring Ms. Soto's version of the facts of the accident itself, and there was no specific mention of exploring assets in that request. Allstate properly retained counsel to provide Ms. Soto with legal advice concerning her rights and responsibilities. That counsel properly contacted Mr. Kalbac regarding the scope of the proposed sworn statement. Mr. Kalbac unilaterally took that inquiry as a rejection of his request. Therefore, Mr. Kalbac's lack of a pre-suit statement of Ms. Soto, at least concerning assets, was self-inflicted.

(10) Communication with the named insured by Allstate was continuous and comprehensive.

(11) Allstate did all it could to effect settlement of the liability claims against Michelle Soto within 30 days of the occurrence. The only thing outstanding was personal injury protection benefits that may have been due either to Mrs. Nunez Delgado or to her healthcare providers but no written notice concerning the amount of any such loss had been provided to Allstate pursuant to either the policy or the statute so as to make payment of any such losses due. No "bad faith" claim would be available on this issue as a matter of law.

Plaintiffs move to exclude Mr. Kadyk on three separate grounds. First, Plaintiffs argue that Mr. Kadyk is not qualified to opine on an insurer's internal claims handling

obligations. Second, Plaintiffs argue that Mr. Kadyk's opinions must be excluded because they are not the product of a reliable methodology. Third, Plaintiffs argue that Mr. Kadyk's opinions must be excluded because they are not helpful, and are essentially no different than the arguments Defendant's counsel could make to the jury during closing arguments. I will address each of these arguments in turn.

### IV. DISCUSSION

#### A. Mr. Kadyk's Experience Renders Him Unqualified

Plaintiffs argue that Mr. Kadyk is not qualified to provide an expert opinion on good faith insurance claims handling because he has never been an insurance adjustor, managed insurance adjustors, been employed by an insurance company, or even received training in proper claims adjusting. Rather, Mr. Kadyk has only worked as an attorney specializing in insurance law. Plaintiffs claim that Mr. Kadyk's opinions are nothing more than the type of arguments that Defendant's counsel in this case can make. Defendant argues that Mr. Kadyk's thirty-six years as an attorney specializing in insurance law is sufficient experience to qualify him as an expert on good faith insurance claims handling.

Mr. Kadyk has thirty-six years of experience as an attorney providing legal advice to insurance companies. He has never represented a party in an insurance bad faith suit; nor has he presented a seminar or spoken at a professional conference on the subjects of "insurance bad faith" or "insurance claims handling practices," or published articles or books on these subjects. He has no experience adjusting claims for insurance companies, and has never been employed by an insurance company.

I agree with Plaintiffs that Mr. Kadyk's experience as a lawyer practicing in the area of insurance law is insufficient to render him qualified to provide expert testimony as to the proper claims handling processes for insurers. An expert must be qualified to testify competently about the matters he intends to address. *Allison v. McGhan Medical Corp.*, 184 F.3d 1300, 1309 (11th Cir. 1999). A lawyer with extensive experience in a particular area of law is not necessarily qualified to provide expert testimony on proper internal processes of the particular industry the lawyer represents. *See, e.g., Novak v. Progressive Halcyon Insurance Company*, No. 04-0632, 2005 WL 5989782, at 4-5 (M.D. Pa. Sept. 13, 2005) (excluding expert in bad faith case where expert's experience was in serving as Insurance Commissioner and lawyer practicing insurance law, but expert had no experience in internal

handling of claims); *Butler v. First Acceptance Ins. Co., Inc.*, 652 F. Supp. 2d 1264, 1272 (N.D. Ga. 2009) (excluding expert in bad faith failure to settle case where expert worked as an attorney for over 30 years in personal injury and insurance litigation, but never worked in the insurance industry); *Cf. Camacho v. Nationwide Mut. Ins. Co.*, 13 F. Supp. 3d 1343, 1368 (N.D. Ga. 2014) (expert who had more than twenty-seven years of experience working for two different insurance companies as a claims adjuster, auditor of proper claims handling, and developer of best practices for claims handling, and taught claims handling practices to field staff was qualified to opine on insurer's claims handling conduct).[1] In this case, I find that Mr. Kadyk's particular expertise – in insurance law – does not match the type of expertise needed to render an expert opinion on the internal standards for handling an insurance claim.

### B. Mr. Kadyk's Opinions Are Not Based on Reliable Principles and Methods

Plaintiffs argue that Mr. Kadyk's opinions should also be excluded because they are not based on any reliable methodology. Defendant argues that Mr. Kadyk's opinions are based on his extensive experience as an attorney specializing in insurance law matters.

In the context of an expert witness testifying on the basis of specialized experience, a reliable methodology means that "the witness must explain how [his] experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts [of the case]." *Smith v. Royal Caribbean Cruises, Ltd.*, Case No. 13-20697, 2014 WL 6997644, at *3 (S.D. Fla. Dec. 10, 2014); *see also Kaufman v. Pfizer Pharmaceuticals, Inc.*, Case No. 1:02-CV-22692, 2011 WL 7659333, at *7 (S.D. Fla. Aug. 4, 2011) ("Dr. Parisian may not render an opinion and then merely state that it is based on her experience. Instead, she must explain the underlying experiences and how they inform her opinions."). "[T]he trial judge must have considerable leeway in

---

[1] Defendant cites to *Royal Marco Point 1 Condominium Ass'n v. QBE Ins. Corp.*, No. 2:07-cv-16-FtM-99SPC, 2011 WL 470561, at *2, *4 (M.D. Fla. Feb. 2, 2011) and *Geico Cas. Co. v. Beauford*, No. 8:05-cv-697-T-24EAJ, 2007 WL 2412974, at *4 (M.D. Fla. Aug. 21, 2007) for the proposition that an attorney can qualify as an expert in insurance claims handling despite not having any experience working for an insurance company. I respectfully find that those cases fail to provide extensive analysis on the issue, and therefore find them unpersuasive.

deciding in a particular case how to go about determining whether particular expert testimony is reliable." *Kumho*, 526 U.S. at 152.

In this case, I find that Mr. Kadyk has failed to show how his experience as an attorney handling insurance matters provides a sufficient basis for the opinions he proffers. For example, Mr. Kadyk opines that Allstate properly requested documentation of losses that would be potentially incurred by Magaly Nunez Delgado and covered by the personal injury protection portion of the policy, which was never submitted in connection with any claim for benefits under that coverage. (*See* 47-1 at 7, 10 of 11, Opinions #4, #11). However, Mr. Kadyk does not explain how his experience as a lawyer working on insurance related cases has informed that opinion. To the extent Mr. Kadyk is forming this opinion based on the requirements of Florida Statutes, if needed, the Court will instruct the jury on the relevant PIP law and Defendant's attorney can argue to the jury what the import of that law is in this case. Mr. Kadyk is simply asking the Court to take a leap of faith that his extensive work as an attorney has given him the ability to reliably apply that experience to the facts of this case, but has failed to meet his burden of explaining how that experience can reliably lead to the conclusions he proffers. *See U.S. v. Frazier*, 387 F.3d 1244, 1261 (11th Cir. 2004) ("The trial court's gatekeeping function requires more than simply taking the expert's word for it.").

  **C.**  **Mr. Kadyk's Opinions Are Not Helpful to the Jury**

Plaintiffs argue that Mr. Kadyk's opinions should be excluded because they are not helpful in that they amount to applying the facts of this case to Florida law, an analysis that is for the jury (applying the facts) and the Court (supplying the law), not an expert. Furthermore, Plaintiffs argue that numerous opinions offered by Mr. Kadyk are based on credibility determinations, which is a function for the jury, not an expert. Finally, Plaintiffs argue that some of Mr. Kadyk's opinions are nothing more than the closing arguments of counsel for Defendant in this case, and that they should be excluded as improper bolstering of those arguments.

I agree with Plaintiffs that certain opinions proffered by Mr. Kadyk are not helpful to the jury. With respect to Opinions 1 through 3, which opine that Allstate timely and properly proffered the $5,000 PIP death benefit and the $25,000 per person bodily injury liability benefits, I find that these opinions are not helpful to the jury because Plaintiffs have

9

not alleged that these three types of benefits were not timely proffered. In other words, these three opinions are not relevant. *See Daubert*, 509 U.S. at 591 ("Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful.").

With respect to Opinions 7 through 9, I find that these opinions are not helpful to the jury because they relate to issues of fact that the jury is capable of determining without the assistance of an expert. *See Frazier*, 387 F.3d at 1262 ("[E]xpert testimony is admissible if it concerns matters that are beyond the understanding of the average lay person."). Opinion 7 states that Allstate committed certain clerical errors that resulted in communications being sent to Mrs. Nunez Delgado, rather than her attorney, and that those communications did not affect the ultimate result of the settlement discussions. The jury is perfectly capable of making that factual determination without the assistance of an expert. Opinion 8 is that there is no support for the assertion by Mr. Kalbac that Allstate made promises of the delivery of checks totaling $65,000, which were not kept. Again, this opinion does not rely on any particular expertise, and the jury is not aided by hearing an expert opine on this factual matter. The same goes for Opinion 9, which states that Mr. Kalbac's request for a sworn statement was for the purpose of exploring Ms. Soto's version of the facts of the accident itself, and there was no specific mention of exploring assets in that request. The jury is capable of making that factual determination without the assistance of an expert.

Finally, I find that the majority of Mr. Kadyk's opinions are not helpful to the jury because they "offer nothing more than what lawyers for the parties can argue in closing arguments." *See Frazier*, 387 F.3d at 1263. For example, Mr. Kadyk opines that Allstate did all it could to effectuate settlement of the liability claims against Ms. Soto. This is an argument that Defendant's counsel can make to the jury during closing arguments. Similarly, Mr. Kadyk opines on the inferences to be drawn from various facts in this case, such as that Mr. Kadyk created an impediment and obstacle to resolution of all of the claims, that Mr. Kadyk's request for a sworn statement of Ms. Soto was intended for purposes of exploring Ms. Soto's version of the facts, and not for the purpose of determining whether Ms. Soto had collectible assets, and that there was no evidence that Allstate made promises of the delivery of checks totaling $65,000, which were not kept. Agsin, Defendant's counsel can make these arguments to the jury.

V. CONCLUSION

As stated herein, Mr. Kadyk's expert testimony is excluded on the grounds that he is not qualified to render the opinions he proffers; he has not demonstrated that his opinions are the result of a reliable methodology; and his opinions would not be helpful to the trier of fact.

Accordingly, it is **ORDERED and ADJUDGED** that Plaintiffs' *Daubert* Motion to Exclude the Testimony of D. James Kadyk (ECF No. 47) is **GRANTED**.

**DONE and ORDERED** in chambers, at Miami, Florida, this 23rd day of September 2015.

*/s/ Marcia G. Cooke*
MARCIA G. COOKE
United States District Judge

Copies furnished to:
*Edwin G. Torres, U.S. Magistrate Judge*
*Counsel of record*