UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 14-20654-Civ-COOKE/TORRES

FRANK LOPEZ, as personal
representative of the Estate of
Giraldo Lopez, and MAGALY
NUNEZ-DELGADO, individually
and as assignee of Michelle Soto,

    Plaintiffs,

v.

ALLSTATE FIRE AND CASUALTY
INSURANCE COMPANY,

    Defendant.
_____/

## ORDER ON DEFENDANT'S MOTION TO LIMIT TESTIMONY OF EXPERT WITNESS DONALD DINSMORE

Plaintiffs bring this third-party insurance bad faith action against Defendant Allstate Fire and Casualty Insurance Company ("Allstate") for its allegedly unreasonable failure to settle claims made against Allstate's insured, Michelle Soto, resulting in an excess judgment against its insured. Before me now is Allstate Fire and Casualty Insurance Company's Motion to Limit Testimony of Expert Witness Donald Dinsmore (ECF No. 49), to which Plaintiffs have responded (ECF No. 52). I have reviewed the motion, response, the record, and the relevant legal authorities. For the reasons that follow, Defendant's motion is granted in part and denied in part.

### I. BACKGROUND

The background facts relating to the allegations raised in Plaintiffs' Amended Complaint are detailed in my Order on Plaintiffs' *Daubert* Motion to Exclude the Testimony of D. James Kadyk. (*See* ECF No. 82). Defendant seeks to limit the testimony of Plaintiffs' expert witness, Donald Dinsmore. Plaintiffs proffered Mr. Dinsmore as an expert witness in the area of insurance claims handling. Mr. Dinsmore has worked in the insurance industry

1

in various capacities for over 24 years and has 16 years of insurance litigation experience. (ECF No. 49-1 at 2 of 42). He has worked, *inter alia*, as a field claims representative, claims specialist, special disaster supervisor, agent, independent adjuster, and general adjuster for insurance companies such as State Farm Group, Prudential of America Group, The Lumbermens Mutual Insurance Co., and United Services Automobile Association. (*Id.* at 21 of 42). Mr. Dinsmore then obtained a law degree before spending the next decade and a half doing consulting work for insurance companies.

Mr. Dinsmore opines as to whether Defendant met industry standards in its claims handling; as to the type of policy at issue; and as to whether Allstate's insurance adjusters and claims managers met their duties to investigate, evaluate, communicate, and settle within policy limits when doing so is possible and is in their insured's interest. Mr. Dinsmore specifically opines that Allstate should have tendered the full policy limits – both the bodily injury limits and the personal injury protection ("PIP") limits – in order to protect its insured from an excess judgment.

Defendant seeks to preclude Mr. Dinsmore from testifying specifically regarding Plaintiffs' claims for PIP benefits and Allstate's handling of those claims. Defendant argues that Mr. Dinsmore is not qualified to testify competently regarding Allstate's handling of Plaintiffs' PIP claims, that Mr. Dinsmore's opinions regarding Allstate's handling of Plaintiffs' PIP claims are unreliable, and that Mr. Dinsmore's testimony regarding Allstate's handling of Plaintiff's PIP claims will not assist the trier of fact.

## II.   LEGAL STANDARDS

Rule 702 of the Federal Rules of Evidence provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

A district court has the responsibility of acting as a gatekeeper to exclude unreliable expert testimony. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). This gatekeeping function applies to "all expert testimony," whether based on "scientific knowledge" or "based on technical and other specialized knowledge." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141 (1999). In order to determine the admissibility of expert testimony, a district court must consider whether: (1) the expert is qualified to testify competently as to the subject matter he intends to address; (2) the method employed by the expert is sufficiently reliable; and (3) the testimony assists the trier of fact to comprehend the evidence through the application of the witness's expertise. *Quiet Tech. DC-8, Inc. v. Hurel-Dubois U.K. Ltd.*, 326 F.3d 1333, 1340-41 (11th Cir. 2003). The party seeking to introduce expert testimony bears the burden of satisfying these criteria by a preponderance of the evidence. *Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1306 (11th Cir. 1999).

In performing its gatekeeping function under *Daubert*, the district court's role is not "to make ultimate conclusions as to the persuasiveness of the proffered evidence." *Quiet Tech.*, 326 F.3d at 1341. "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Id.* (*quoting Daubert*, 509 U.S. at 596).

### III.  ANALYSIS

#### A.  Mr. Dinsmore's is Qualified to Opine About Plaintiff's PIP Claims and Allstate's Handling Thereof.

Allstate argues that Mr. Dinsmore should not be permitted to opine on Allstate's handling of Plaintiffs' PIP claims because, while he is experienced in the insurance claims handling industry generally, he has limited experience handling Florida PIP claims specifically and is not knowledgeable regarding the applicable standards for handling Florida PIP claims. I disagree. Mr. Dinsmore is qualified to opine on Allstate's handling of Plaintiffs' claims against Allstate's insured by including PIP benefits in its settlement offers.

A witness may be qualified as an expert by scientific training, education, or experience in a pertinent field or occupation. *United States v. Frazier*, 387 F.3d 1244, 1261 (11th Cir. 2004). Here, Mr. Dinsmore is qualified to provide expert opinions on insurance

industry standards and practices by his more than 40 years of professional experience within the insurance industry. Mr. Dinsmore has been employed as an insurance adjustor, agent, supervisor and consultant for numerous nationally prominent insurance companies. (ECF 49-1 at 21). He has handled claims arising from all types of insurance policies, including bodily injury claims arising under automobile policies and catastrophic claims. (ECF No. 49-2 at 29:3-8, 30:2-7, 30:20-23, 31:2-7). Mr. Dinsmore also handled PIP claims in Florida, though only on severe claims, and on a limited basis (less than 100). (*Id.* at 105:3 – 106:6). At various times, Mr. Dinsmore has been licensed as an insurance adjustor in five states, including Florida, and has held numerous licenses for the State of Florida (General Lines, All-Lines, and Insurance Agent). (*Id.* at 23:12 - 24:6). Mr. Dinsmore holds an Associate in Claims ("AIC") designation from the Insurance Institute of America ("IIA") as well as designations as a Casualty Claims Law Associate ("CCLA") and Property Claim Law Associate ("PCLA"). (*Id.* at 25:1-24). Mr. Dinsmore, a licensed lawyer, has also taught courses in insurance and bad faith, and has published articles in these areas. (*Id.* at 26:12 - 27:16; ECF No. 49-1 at 22, 40). I find this experience to be more than adequate to qualify Mr. Dinsmore as an expert in insurance industry claims handling standards.

Defendant nevertheless argues that Mr. Dinsmore's experience in handling PIP claims specifically is insufficient to qualify him to opine on Allstate's handling of Plaintiffs' PIP claims in this case. I disagree. Mr. Dinsmore's opinion is that Allstate should have, under the circumstances presented, included the available PIP benefits in its settlement offers so as to protect its insured from an excess judgment. Mr. Dinsmore does not opine on whether Plaintiffs complied with all the requirements under Florida PIP law for obtaining PIP benefits. In other words, Mr. Dinsmore's expert opinion is that Allstate should have handled Plaintiffs' claims as a global settlement opportunity, rather than treat the bodily injury claim in a manner entirely divorced from the PIP claims, under the circumstances of which Allstate was aware. I find that Mr. Dinsmore's experience with adjusting severe claims involving PIP benefits is adequate to admit his expert opinions. Defendant can address any deficiencies it perceives in Mr. Dinsmore's experience through cross-examination and the presentation of contrary evidence.

4

### B. Mr. Dinsmore's Opinions Regarding AllState's Handling of PIP Claims are Reliable.

Allstate argues that Mr. Dinsmore's opinions regarding Allstate's handling of PIP claims in this case are unreliable because Mr. Dinsmore lacks experience and knowledge regarding PIP claims in Florida, and because Mr. Dinsmore fails to consider components of Florida's PIP statute. More specifically, Allstate argues that Mr. Dinsmore's "testimony infers that PIP claims are governed by the same standards as bodily injury liability claims." (ECF No. 49 at 7). I disagree.

When an expert depends on his experience and education to opine on a matter, he must explain how that experience led to his conclusions, why that experience was a sufficient basis for the opinions, and how that experience was reliably applied to the facts of the case. *Frazier*, 387 F.3d at 1265. Rather than attack Mr. Dinsmore's methodology head on, Allstate's argument relies on misconstruing Plaintiffs' legal theory and Mr. Dinsmore's expert opinions. Mr. Dinsmore is not opining on whether Plaintiffs or Defendant complied with Florida PIP statutes, but rather, on whether, under the circumstances known or capable of being known, Allstate met its duty of good faith to its insured when it treated Plaintiffs' demand for the full $65,000 available policy limits as two separate claims for bodily injury limits and PIP limits, and required Plaintiffs to submit certain PIP-related paperwork, rather than considering the opportunity for a global settlement. Mr. Dinsmore's methodology for opining on this subject matter is sufficiently reliable. He identifies industry standards for claims handling based on his extensive experience working within the insurance industry, as detailed above, and based on his review of applicable laws, regulations, publications, and manuals, and applies those standards to the case at bar after reviewing the claims file.

### C. Mr. Dinsmore's Opinions will Largely Assist the Jury.

Finally, Allstate argues that Mr. Dinsmore's opinions regarding personal injury protection will not assist the jury because Ms. Nunez-Delgado's claim for PIP benefits was a first-party claim against Allstate pursuant to the insurance policy, whereas the instant case is for common law bad faith against Allstate arising out of Allstate's handling of the bodily injury liability claims against Allstate's insured, Ms. Soto. In other words, Allstate argues

that its "handling of the PIP claims has no bearing on the handling of the bodily injury liability claims and, therefore, is not part of the totality of the circumstances" the jury will consider in determining whether Allstate acted in bad faith. (ECF No. 49 at 13).

Defendant's argument was the same argument it made when it moved for summary judgment in this case. (ECF No. 57). For the same reasons set forth in my Order on Defendant's Motion for Summary Judgment (ECF No. 72), I find Allstate's argument unpersuasive. *See Geico Cas. Co. v. Beauford*, No. 8:05-cv-697-T-24EAJ, 2007 WL 2412974, at *2 (M.D. Fla. Aug. 21, 2007) ("Florida case law states that an insurer has the discretion to reasonably determine how to best limit the insured's liability, and that whether the insurer could have minimized the insured's exposure to excess judgment through wiser settlement practices (such as a global settlement conference) is a question for the jury."). Defendant's citation to *Altheim v. GEICO Gen. Ins. Co.*, No 8:10-CV-156-T-24 TBM, 2011 WL 1429735 (M.D. Fla. Apr. 14, 2011) is unavailing. In *Altheim*, the Court held that an insurer's payment of PIP benefits could not be used as evidence that the insurer should have also paid the plaintiff's uninsured/underinsured motorist ("UM") claim. *Id.* at 7. The facts of *Altheim* are simply inapposite to this case. The plaintiff in that case sought to settle her UM claim with her insured for the per person policy limits. *Id.* at *1. There is no indication in that case that the insured sought to settle for an amount that included different types of insurance benefits, or that she faced the prospect of an excess judgment against her. As such, I simply do not find *Altheim* to be persuasive.

I do, however, agree with Defendant that some of Mr. Dinsmore's proffered opinions are not helpful to the jury because the jury is capable of discerning those facts for themselves. *See Frazier*, 387 F.3d at 1262 ("[E]xpert testimony is admissible if it concerns matters that are beyond the understanding of the average lay person."). Those opinions are as follows: (1) "Of the various Allstate claims persons, Muniz was the most empathetic to Soto"; (2) "[Plaintiff's attorney Joseph Kalbac's] deposition shows him to be both zealous and passionate on behalf of his clients"; (3) "Listening to [Ms. Soto's] recorded statement reveals just basic facts with little emotion. This reporter was not able to tell if she experienced the emotions others experience in this situation, including guilt, fear, and anxiety"; (4) opinions regarding factors that made Mr. Kalbac "mad," vexed, or upset; and (5) "The Allstate form letters used in this case were impersonal . . . ." (ECF No. 49-1).

These opinions do not rely on Mr. Dinsmore's expertise and are among the factual determinations that the jury is capable of making without an expert's assistance. Moreover, to the extent that Mr. Dinsmore seeks to opine on the standard for bad faith in Florida, those opinions are excluded because the Court alone is tasked with instructing the jury as to the applicable law. *See Montgomery v. Aetna Cas. & Sur. Co.*, 898 F.2d 1537, 1541 (11th Cir. 1990) ("A witness may not testify to the legal implication of conduct; the court must be the jury's only source of law.").

### IV.   CONCLUSION

For the reasons set forth herein, Defendant's Motion is **GRANTED IN PART** and **DENIED IN PART**. Mr. Dinsmore's expert opinions are admissible, except to the extent that he opines on the applicable law in this case, or his perceptions about empathy, zealousness, passion, emotion, antagonism, vexatiousness, and familiarity of the parties and their actions.

**DONE and ORDERED** in chambers, at Miami, Florida, this 26th day of October 2015.

/s/ Marcia G. Cooke
MARCIA G. COOKE
United States District Judge

Copies furnished to:
*Edwin G. Torres, U.S. Magistrate Judge*
*Counsel of record*